**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>     Plaintiff,<br><br>  v.<br><br>DAVID SMOTHERMON,<br><br><br>     Defendant. | Case No. 2:19-cv-4185 (GBD)<br><br>Hon. George B. Daniels |

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    BACKGROUND ................................................................................................... 1

II.   LEGAL STANDARD.......................................................................................... 3

III.  ARGUMENT...................................................................................................... 4

    A.   The CFTC's Claims Against Defendant Fall Squarely Within the CFTC's Statutory
Authority. ...................................................................................................................... 4

       1.    The CFTC Has Authority Pursuant to Sections 4b(a)(1)(A)–(C) and 6(c)(1) of the Act,
7 U.S.C. §§ 6b(a)(1)(A)–(C), 9(1), and Regulation 180.1, 17 C.F.R. § 180.1, to Prohibit
Fraud in Connection with a Contract of Sale of Any Commodity in Interstate Commerce or
for Future Delivery………………………………………………………………. 4

       2.    Section 6(c)(1) of the Act and Regulation 180.1 Establish Broad Anti-Fraud and Anti-
Manipulation Jurisdiction………………………………………………………… 6

       3.    The Complaint Sufficiently Alleges the Statutory Violations…………………………7

         a.    Defendant Made Misrepresentations and Omissions…………………………...7

         b.    Defendant's Misrepresentations and Omissions Were Made "In Connection With"
Contracts of Sale of a Commodity in Interstate Commerce for Future Delivery………... 8

       4.    The Complaint Is Pleaded with Sufficient Particularity to Meet the Requirements of
Rule 9(b)…………………………………………………………………………….. 9

    B.   Defendant's Arguments Are Without Merit………………………………………….. 11

       1.    The CFTC's Authority to Prosecute Fraud Under Section 6(c)(1) of the Act and
Regulation 180.1 Does Not Require a Showing of Manipulation or Price Impact…... 11

       2.    The CFTC's Authority to Prosecute Fraud Under Section 4b(a)(1)(A)–(C) of the
Act Is Broad and Extends Beyond Cases Involving Victim Losses Caused Solely from
Trading....................................................................................................................... 13

       3.    Defendant Attempts to Impose a Sequencing Requirement for the "In Connection
With" Element That Does Not Exist and Is Unsupported by the Law……………….. 16

       4.    Section 4b(a)(1)(A)–(C) Applies to Employees Trading on Behalf of Their
Employers…………………………………………………………………………….. 19

       5.    In Civil Enforcement Actions Under Section 6(c)(1) and Regulation 180.1(a), the
CFTC Is Not Required to Prove Transaction or Loss Causation……………………...20

       6.    Defendant's Remaining Arguments Are Irrelevant and Meritless……………… 22

IV.  CONCLUSION.................................................................................................................. 24

Case 2:19-cv-04185-GBD   Document 47   Filed 04/28/26   Page 3 of 34

# TABLE OF AUTHORITIES

**Cases**                                                                                                Page(s)

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ................................................................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 3

*CFTC v. Aipu Ltd.*,
   No. 3:24-cv-5815, 2025 WL 1489729 (W.D. Wash. May 22, 2025).................................... 6, 8

*CFTC v. Alexandre*,
   801 F. Supp. 3d 185 (S.D.N.Y. 2025) ............................................................................... 23, 24

*CFTC v. Brooks*,
   No. 1:13-cv-6879, 2014 WL 4443446 (S.D.N.Y. Aug. 1, 2014) ....................................... 15, 19

*CFTC v. Cassidy*,
   No. 1:08-cv-9962, 2009 WL 5454918 (S.D.N.Y. Nov. 5, 2009) ....................................... 15, 16

*CFTC v. Fin. Tree*,
   No. 2:20-cv-1187, 2022 WL 36416 (E.D. Cal. Jan. 4, 2022)..................................................... 14

*CFTC v. Fisher Cap. LLC*,
   No. 1:23-cv-3121, 2024 WL 3771781 (E.D.N.Y. July 12, 2024) ................................. 7, 11, 23

*CFTC v. Fleury*,
   No. 0:03-cv-61199, 2010 WL 5146283 (S.D. Fla. June 18, 2010) ............................................ 8

*CFTC v. Gorman*,
   No. 1:21-cv-870, 2023 WL 2632111 (S.D.N.Y. Mar. 24, 2023) ................................. 7, 11, 22

*CFTC v. Hunter Wise Commodities, LLC*,
   21 F. Supp. 3d 1317 (S.D. Fla. 2014)..................................................................................... 6

*CFTC v. Int'l Fin. Servs. (New York), Inc.*,
   323 F. Supp. 2d 482, 499 (S.D.N.Y. 2004) ........................................................................ 6, 21

*CFTC v. Kraft Foods Grp., Inc.*,
   153 F. Supp. 3d 996 (N.D. Ill. 2015)...................................................................................... 7

*CFTC v. LaMarco*,
   No. 2:17-cv-4087, 2019 WL 4247632 (E.D.N.Y. Sept. 5, 2019)................................. 14, 17, 20

*CFTC v. Machado*,
   No. 1:11-cv-22275, 2012 WL 2994396 (S.D. Fla. Apr. 20, 2012) ..................................... 17, 18

*CFTC v. McDonnell*,
   287 F. Supp. 3d 213 (E.D.N.Y. 2018) ..................................................................... 11

*CFTC v. McDonnell*,
   332 F. Supp. 3d 641 (E.D.N.Y. 2018) ................................................................... 6, 20

*CFTC v. Mirror Trading Int'l Prop. Ltd.*,
   No. 1:22-cv-635, 2023 WL 3190336 (W.D. Tex. Apr. 24, 2023)............................................. 24

*CFTC v. Monex Credit Co.*,
   931 F.3d 966 (9th Cir. 2019) ...................................................................................... 7

*CFTC v. Montano*,
   No. 6:18-cv-1607, 2020 WL 5534521 (M.D. Fla. July 14, 2020)............................................. 23

*CFTC v. My Big Coin Pay, Inc.*,
   334 F. Supp. 3d 492 (D. Mass. 2018)...................................................................... 11

*CFTC v. PMC Strategy, LLC*,
   903 F. Supp. 2d 368 (W.D.N.C. 2012)..................................................................... 15

*CFTC v. R.J. Fitzgerald & Co.*,
   310 F.3d 1321 (11th Cir. 2002) ....................................................................................... 6

*CFTC v. Rolando*,
   589 F. Supp. 2d 159 (D. Conn. 2008)................................................................... 17, 18

*CFTC v. Rosenberg*,
   85 F. Supp. 2d 424 (D.N.J. 2000)........................................................................... 21

*CFTC v. S. Tr. Metals, Inc.*,
   894 F.3d 1313 (11th Cir. 2018) ........................................................................... 11, 12

*CFTC v. Taylor*,
   No. 1:12-cv-8170, 2013 WL 5437362 (S.D.N.Y. Aug. 29, 2013) ..................................... 15, 19

*CFTC v. Vartuli*,
   228 F.3d 94 (2d Cir. 2000) ................................................................................... 18, 19

*CFTC v. Zhu*,
No. 2:23-cv-4937, 2023 WL 12144272 (C.D. Cal. Dec. 7, 2023) ............................................ 14

*Chevron U.S.A. v. Natural Resources Defense Council*,
467 U.S. 837 (1984) ................................................................................................................. 13

*Chiarella v. United States*,
445 U.S. 222 (1980) ................................................................................................................... 7

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021) ........................................................................................ 10

*Dane v. United Healthcare Ins.*,
974 F.3d 183 (2d Cir. 2020) ....................................................................................................... 3

*Dover Ltd. v. A.B. Watley, Inc.*,
423 F. Supp. 2d 303 (S.D.N.Y. 2006) ........................................................................................ 3

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004) ....................................................................................................... 3

*Great W. Ins. Co. v. Graham*,
No. 1:18-cv-6249, 2020 WL 3415026 (S.D.N.Y. Jun. 22, 2020) ............................................ 10

*In re Bourne*,
CFTC No. 18-51, 2018 WL 4862368 (Sept. 28, 2018) ............................................................ 12

*In re Brochard*,
CFTC No. 22-24, 2022 WL 4118640 (Sept. 6, 2022) .............................................................. 12

*In re Hartog*,
CFTC No. 00-07, 2000 WL 256123 (Mar. 7, 2000) ........................................................... 15, 20

*In re J.P. Jeanneret Assocs., Inc.*,
769 F. Supp. 2d 340 (S.D.N.Y. 2011) ........................................................................................ 8

*In re Moster*,
CFTC No. 09-08, 2009 WL 10460307 (Feb. 11, 2009) ............................................................ 15

*In re Rege*,
CFTC No. 19-14, 2019 WL 4267850 (July 18, 2019) .............................................................. 12

*Kasten v. Saint-Gobain Perf. Plastics Corp.*,
563 U.S. 1, 15 (2011) ................................................................................................................ 22

v

*Kearney v. Prudential-Bache Secs., Inc.*,
    701 F. Supp. 416 (S.D.N.Y. 1988) ....................................................................... 16

*Krukever v. TD Ameritrade, Inc.*,
    337 F. Supp. 3d 1227 (S.D. Fla. 2018) ................................................................ 21

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ................................................................................... 4

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................................. 13

*Merrill Lynch Futures Inc. v. Kelly*,
    585 F. Supp. 1245 (S.D.N.Y. 1984) ..................................................................... 19

*R&W Tech. Servs. Ltd. v. CFTC*,
    205 F.3d 165 (5th Cir. 2000) ..................................................................... 16, 17, 18

*Saxe v. E.F. Hutton & Co.*,
    789 F.2d 105 (2d Cir. 1986) ................................................................................. 19

*SEC v. DiBella*,
    No. 3:04-cv-1342, 2005 WL 3215899 (D. Conn. Nov. 29, 2005) ........................... 8

*SEC v. Goble*,
    682 F.3d 934 (11th Cir. 2012) .............................................................................. 20

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) .............................................................. 15, 21

*SEC v. Zandford*,
    535 U.S. 813 (2002) ............................................................................................... 8

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ................................................................................... 4

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................................................. 13

*Tatum v. Legg Mason Wood Walker, Inc.*,
    83 F.3d 121 (5th Cir. 1996) ................................................................................. 16

*U.S. Cap. Partners, LLC v. Stanwich Cap. Advisors, LLC*,
    No. 1:14-cv-4138, 2015 WL 4388421 (S.D.N.Y. July 17, 2015) ............................. 3

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016) ............................................................................. 3

*United States v. DiCristina*,
  726 F.3d 92 (2d Cir. 2013) ............................................................................. 22

*United States v. Nouri*,
  711 F.3d 129 (2d Cir. 2013) ........................................................................... 9

*United States v. Phillips*,
  No. 1:22-cr-138, 2024 WL 1300269 (S.D.N.Y. Mar. 27, 2024) ............................ 22

*United States v. Smothermon*,
  No. 1:19-cr-382 (AKH), 2024 WL 4227256 (S.D.N.Y. Sept. 18, 2024) .................. 10

**Statutes**

7 U.S.C. § 5(b) ............................................................................................. 24

7 U.S.C. § 6b ........................................................................................... 16, 23

7 U.S.C. § 6b(a)(1)(A)–(C) ..................................................................... 2, 4, 5, 6

7 U.S.C. § 9(1) .....................................................................................*Passim*

7 U.S.C. §§ 6k(2), 6m(1), 6*o* ........................................................................ 23

15 U.S.C. § 78j(b) ....................................................................................... 6

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................... 1, 3, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................... 3

**Regulations**

17 C.F.R. § 180.1 ...................................................................................*Passim*

*Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive
  Devices and Prohibition on Price Manipulation*,
  76 Fed. Reg. 41,398 (July 14, 2011) ...................................................... 6, 8, 12, 22

Plaintiff Commodity Futures Trading Commission ("CFTC") respectfully submits this Opposition to Defendant Smothermon's Motion to Dismiss the Complaint ("Def. Mem.," ECF No. 46). Defendant's motion should be denied because his fraudulent misconduct was "in connection with" contracts of sale of a commodity in interstate commerce and for future delivery as required by the charged provisions of the Commodity Exchange Act ("Act") and Commission Regulations ("Regulations"). The CFTC is not attempting to expand its fraud jurisdiction to unrelated "private corporate recordkeeping issues," rather Defendant engaged in a deliberate fraudulent scheme to hide his trading losses and deceive his employer about his futures and physical commodity trading. Defendant further incorrectly argues that the CFTC's anti-fraud authority "is limited to conduct affecting market integrity or the price discovery process." Def. Mem. at 1, 11–12 (ECF No. 46). This misstates the required elements to prove fraud under the charged provisions of the Act and Regulations. Likewise, despite Defendant's argument to the contrary, there is no transaction or loss causation requirement in a civil enforcement action brought by the CFTC pursuant to Section 6(c)(1) of the Act and Regulation 180.1(a). Finally, the Complaint is well pleaded and meets the heightened standard of Federal Rule of Civil Procedure 9(b). For these reasons, discussed in greater detail below, Plaintiff requests that the Court deny Defendant's motion in its entirety.

## I.  BACKGROUND

In May 2019, the CFTC charged the Defendant, previously employed as a president of the gas division (the "Gas Division") of a large commodities-trading company (the "Company"), with fraudulently mismarking his natural-gas-related futures and physical trades from December 2015 to September 1, 2016 (the "Relevant Period"). Compl. ¶¶ 1–2 (ECF No. 1). Defendant mismarked these trades to inflate the reported mark-to-market profit-and-loss ("PnL") value of

1

his division's overall trading book and thereby conceal his trading losses that ultimately caused the company to suffer more than $100 million in realized losses. *Id*. ¶¶ 1–6. The CFTC's two-count Complaint alleged that, by virtue of his conduct, Defendant violated the Act's and Regulations' prohibition on manipulative and deceptive devices, 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) (Count I), and the Act's anti-fraud provision in connection with futures contracts, 7 U.S.C. § 6b(a)(1)(A)–(C) (Count II).

Smothermon was also charged criminally for this misconduct. On May 23, 2019, Defendant was indicted in this District for wire fraud. *United States v. Smothermon*, No. 1:19-cr-382 (AKH) (ECF No. 25). On May 14, 2024, a grand jury issued a superseding indictment, charging Defendant with one count of wire fraud for engaging in a fraudulent scheme when he "concealed substantial losses in his trading book by causing false entries to be made in an accounting system used by the financial firm for which he worked and mismarking his trading positions, leading the firm to substantially overvalue various positions it held, in order to obtain a discretionary bonus to which he would not have been entitled." Superseding Indictment, *United States v. Smothermon*, No. 1:19-cr-382 (AKH) (ECF No. 96) (attached hereto as Exhibit 1). On May 8, 2025, Defendant pleaded guilty to that one count of wire fraud and admitted that (1) it was part of his job to make trades and to value his trades by marking them in the Company's accounting system and (2) that he intentionally overvalued and knowingly falsified records of his trades to save his bonus. *See* Plea Tr. at 20:3—21:8 (ECF No. 125) (attached hereto as Exhibit 2). On November 25, 2025, the Court sentenced Defendant to a term of 36-months incarceration and ordered him to pay $19,550,081.00 in restitution, of which $8,300,000.00 had already been paid, leaving a balance of $11,250,081 and forfeiture of $11,600,000. Judgment, *Id*. (ECF No. 152).

2

## II.     LEGAL STANDARD

Smothermon challenges the sufficiency of the Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  "To survive a motion to dismiss," pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint satisfies this standard when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  At this stage, a court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations."  *Dane v. United Healthcare Ins*., 974 F.3d 183, 188 (2d Cir. 2020) (internal quotations omitted).

Fraud claims must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006).  "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotations omitted).  Additionally, a claim must "allege facts that give rise to a strong inference of fraudulent intent."  *U.S. Cap. Partners, LLC v. Stanwich Cap. Advisors, LLC*, No. 1:14-cv-4138, 2015 WL 4388421, at *3 (S.D.N.Y. July 17, 2015) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging

3

facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

## III.    ARGUMENT

### A.    The CFTC's Claims Against Defendant Fall Squarely Within the CFTC's Statutory Authority.

The CFTC's claims against Defendant fit squarely within the plain language of Sections 6(c)(1) and 4b(a)(1)(A)–(C) of the Act, 7 U.S.C. §§ 9(1), 6b(a)(1)(A)–(C), and Regulation 180.1, 17 C.F.R. § 180.1.  Defendant's misconduct in trading futures and physical commodities on his employer's behalf and then misrepresenting the terms of those trades to his employer is plainly fraud "in connection with" contracts of sale of a commodity in interstate commerce or for future delivery.  The CFTC is not attempting to expand its fraud authority to corporate accounting that is disconnected from the financial markets it oversees.  Accordingly, and unsurprisingly, this case is similar to numerous fraudulent mismarking actions prosecuted by the CFTC.

### 1.    The CFTC Has Authority Pursuant to Sections 4b(a)(1)(A)–(C) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)–(C), 9(1), and Regulation 180.1, 17 C.F.R. § 180.1, to Prohibit Fraud in Connection with a Contract of Sale of Any Commodity in Interstate Commerce or for Future Delivery.

Section 4b(a)(1)(A)–(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)–(C), makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person"

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

4

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person . . . .

7 U.S.C. § 6b(a)(1)(A)–(C).

Section 6(c)(1) of the Act, codified at 7 U.S.C. § 9(1), makes it "unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, *in connection with* any swap, *or a contract of sale of any commodity in interstate commerce, or for future delivery* on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . . " (emphasis added).

Similarly, Regulation 180.1(a) provides:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements not untrue or misleading;

(3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

17 C.F.R. § 180.1(a).

To prove a violation of Sections 4b(a)(1)(A)–(C) and 6(c)(1) and Regulation 180.1, the CFTC need only show that Defendant: "(1) engaged in prohibited conduct (*i.e.*, employed a fraudulent scheme, made material misrepresentations or materially misleading omissions, or misappropriated customer funds); (2) in connection with the sale of a commodity in interstate

5

commerce, [or for future delivery on or subject to the rules of any registered entity]; and (3) with scienter."[1] *CFTC v. Aipu Ltd.*, No. 3:24-cv-5815, 2025 WL 1489729, at *9 (W.D. Wash. May 22, 2025) (discussing elements required by Regulation 180.1) (citing *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018)); *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014) (same); *see also, e.g.*, *CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d 482, 499 (S.D.N.Y. 2004) (discussing elements required by Section 4b(a)) (quoting *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002)). Section 4b(a) also requires that the futures contract was made "for or on behalf of any other person." 7 U.S.C. § 6b(a)(1)(A)–(C).

### 2. Section 6(c)(1) of the Act and Regulation 180.1 Establish Broad Anti-Fraud and Anti-Manipulation Jurisdiction.

Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), is a broad anti-fraud and anti-manipulation provision added by Section 753 of the Dodd-Frank Act. *See* 124 Stat. 1376 at 1750. Congress modeled Section 6(c)(1) after Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), because the CFTC's and Securities and Exchange Commission's respective enabling statutes are in relevant part "virtually identical," with each including a broad "catchall" prohibition against fraudulent acts. *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg.

---

[1] The Defendant does not challenge the scienter element, and the Complaint adequately pleads the scienter requirement of Sections 4b(a)(1)(A)–(C) and 6(c)(1) and Regulation 180.1. To establish the scienter element of fraud, the CFTC must show that the defendant's conduct was either reckless or intentional. *Aipu Ltd.*, 2025 WL 1489729, at *10 (stating that the scienter required under Regulation 180.1 is reckless or intentional conduct); *Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d at 502 (stating that the scienter required under Section 4b(a) is reckless or intentional conduct). Here, Defendant mismarked his futures positions by tens of millions of dollars and falsified entries concerning physical trades to conceal his mammoth trading losses. Defendant either intentionally or recklessly misrepresented the values of the futures positions and physical trades to the Company by entering values that diverged dramatically from broker quotes, NYMEX daily settlements, and the FCM's true value marks, thereby masking the true value (and enormous losses) of the Gas Division's positions.

41,398, 41,399 (July 14, 2011) (citing *Chiarella v. United States*, 445 U.S. 222, 226 (1980));

*CFTC v. Gorman*, No. 1:21-cv-870, 2023 WL 2632111, at *14 (S.D.N.Y. Mar. 24, 2023).  In

interpreting Regulation 180.1, courts are guided, but not controlled, by the substantial body of

judicial precedent interpreting Rule 10b-5.  *See CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d

996, 1008–09 (N.D. Ill. 2015).  "On its face, the Act and Regulation 180.1 extend the CFTC's

enforcement authority over manipulation and fraud in connection with any 'contract of sale of

any commodity in interstate commerce.'"  *CFTC v. Fisher Cap. LLC*, No. 1:23-cv-3121, 2024

WL 3771781, at *8 (E.D.N.Y. July 12, 2024) (citing *CFTC v. Monex Credit Co.*, 931 F.3d 966,

977 (9th Cir. 2019)).

### 3.    The Complaint Sufficiently Alleges the Statutory Violations.

#### a.    Defendant Made Misrepresentations and Omissions.

The Complaint states a claim for violations of Sections 4b(a)(1)(A)–(C) and 6(c)(1) and

Regulation 180.1 because it alleges facts showing that Defendant engaged in a scheme to

intentionally or recklessly mismark positions such as various natural gas futures contracts and

contracts of sale of natural gas in interstate commerce for the purpose of deceptively concealing

his enormous trading losses from his employer.  The Complaint describes Defendant's fraudulent

scheme and how he made material misrepresentations and omissions in mismarking his NYMEX

futures positions and physical natural gas trades.  *See* Compl. ¶¶ 36–59 (describing mismarking

of futures positions including with specific examples on certain dates); *id*. ¶¶ 60–80 (describing

mismarking of natural gas physical trades with specific examples on certain dates).  The

Complaint alleges that Defendant made material misrepresentations to the Company about the

value and size of the Gas Division's overall trading book, as well as the individual positions.  *See*

*id*. ¶¶ 1–2, 43–45, 47, 49–52, 54–55, 64.

      **b.**       **Defendant's Misrepresentations and Omissions Were Made "In Connection With" Contracts of Sale of a Commodity in Interstate Commerce for Future Delivery.**

The fraud at issue, which is not disputed, was "in connection with" various natural gas futures contracts and contracts of sale of natural gas in interstate commerce, as it directly concerns the mismarking of those contracts. "The 'in connection with' requirement of Section 6(c)(1) of the Act and [Regulation 180.1(a)] . . . is satisfied where the contract of sale of a commodity is in interstate commerce and the fraud are not independent events." *Aipu Ltd.*, 2025 WL 1489729, at \*9 (citing *SEC v. Zandford*, 535 U.S. 813, 819 (2002)); *see also In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 361–63 (S.D.N.Y. 2011) (concluding that the "in connection with" requirement, broadly read pursuant to *Zandford*, can be met even in cases involving "completely fictitious" securities transactions). The "in connection with" requirement is construed broadly. *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41398, 41405 (July 14, 2011) ("The Commission interprets the words 'in connection with' broadly, not technically or restrictively."). In the securities context, courts have found a sufficient connection when the fraud "coincides" with the sale of securities: "A fraudulent scheme that coincides with the sale of securities satisfies the 'in connection with' requirement of section 10(b) [of the Exchange Act] and Rule 10b-5." *SEC v. DiBella*, No. 3:04-cv-1342, 2005 WL 3215899, at \*6 (D. Conn. Nov. 29, 2005) (citing *Zandford*, 535 U.S. at 825)); *see also CFTC v. Fleury*, No. 0:03-cv-61199, 2010 WL 5146283, at \*14 (S.D. Fla. June 18, 2010) (applying *Zandford* when considering the "in connection" element of Section 4b and finding the "'in connection' with element merely requires that the fraud has 'some nexus' with the subject transaction"). "The Supreme Court has repeatedly held that [the 'in connection with']

8

requirement . . . is easily satisfied." *United States v. Nouri*, 711 F.3d 129, 143–44 (2d Cir. 2013) (construing SEC Rule 10b-5).

Here, Defendant's fraud occurred in connection with the Company's trading in futures and contracts of sale of commodities, including material misrepresentations and omissions about the value and size of the Gas Division's trading book and individual positions. The Complaint alleges that Defendant traded futures and physical commodities on behalf of the Company. *See* Compl. ¶¶ 19–22, 25, 37. Defendant mismarked valuations of futures contract positions and falsified the terms of physical trades of commodities in interstate commerce. *See* Compl. ¶¶ 36–80. Further, Defendant's deceptive scheme, fraudulent acts, and misrepresentations were not "independent events" from the Company's trading in futures and contracts of sale of commodities. These trades were the basis of Defendant's fraud on his employer and the reason he communicated information about the financial positions to the Company. As discussed below, finding this misconduct was "in connection with" the underlying trades does not "transform the CFTC into a federal overseer of every internal spreadsheet in the commodities industry" as argued by Defendant. *See* Def. Mem. at 12.

4.    **The Complaint Is Pleaded with Sufficient Particularity to Meet the Requirements of Rule 9(b).**

The Complaint satisfies the particularity requirements of Rule 9(b) by detailing Defendant's fraudulent scheme across thirteen pages of factual allegations. The allegations outline the Defendant's scheme of causing false or misleading entries in the Company's T&T System to inflate the value of the trading book and to conceal from the Company the millions of dollars of trading losses he had incurred. Compl. ¶ 1. The allegations in the Complaint in detail (1) explain Defendant's role at the Company (*id*. ¶¶ 19–35); (2) identify the futures and physical commodities contracts involved in Defendant's scheme and the time period that trades and the

9

reporting and recording of those trades were impacted by Defendant's scheme (*id.* ¶¶ 40, 66, 73); (3) provide six examples of the underlying trades—including the who, what, when, where, and why of the trades—and his fraudulent mismarking of those trades in futures (*id.* ¶¶ 36–59) and physical positions (*id.* ¶¶ 60–80), along with Defendant's efforts in mismarking and directing other employees to similarly mismark their trades to make them appear more profitable (*id.* ¶¶ 67–70, 74–75); (4) describe the bonus Defendant received as a result of his mismarking (*id.* ¶ 18); (5) note Defendant's admission to the Company that he had mismarked his book (*id.* ¶ 83); (6) explain the loss caused to the Company as a result of the scheme (*id.* ¶ 87), and (7) state the violations of the Act and Regulation (*id.* ¶¶ 89–101).

This Complaint, therefore, sufficiently describes the fraudulent statements made by Defendant via the mismarking, clearly identifies his role in the mismarking scheme, sufficiently identifies where and when the fraudulent statements were made (including both specific instances and a relevant period),[2] and explains why these mismarked figures were wrong.  The facts as pleaded in the Complaint thus give rise to a strong inference of fraud because they suggest that Defendant mismarked his positions to conceal his massive losses and to obtain a significant bonus in May 2016.  *See United States v. Smothermon*, No. 1:19-cr-382 (AKH), 2024 WL 4227256, at *2 (S.D.N.Y. Sept. 18, 2024), *reconsideration denied*, 2024 WL 4467614 (S.D.N.Y. Oct. 10, 2024) (denying defendant's motion to dismiss the superseding indictment[3] and finding that "[s]eeking to falsely prop up one's performance so that his statistics will look

---

[2] *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 113–14 (S.D.N.Y. 2021) ("[A]t motion-to-dismiss stage, plaintiff can satisfy the 'where and when' requirement by specifying a general time frame, and need not allege 'the specific date of every alleged misstatement.'" (quoting *Great W. Ins. Co. v. Graham*, No. 1:18-cv-6249, 2020 WL 3415026, at *24 (S.D.N.Y. Jun. 22, 2020)).

[3] Defendant attempts to make this same argument again, arguing "the allegations against Mr. Smothermon involve post-trade internal recordkeeping allegedly intended only to 'conceal from the Company' its own trading losses." Def. Mem. at 10 (ECF No. 46).

better for future bonuses . . . falls well within the statutory language of obtaining money or property" within the meaning of the wire fraud statute).

**B.      Defendant's Arguments Are Without Merit.**

**1.      The CFTC's Authority to Prosecute Fraud Under Section 6(c)(1) of the Act and Regulation 180.1 Does Not Require a Showing of Manipulation or Price Impact.**

The CFTC's authority under these provisions is not limited to market manipulation and "protecting the public price discovery process." Def. Mem. at 6–8 (ECF No. 46). Various courts considering these provisions have construed them broadly: "Section 6(c)(1) and Regulation 180.1 are 'catch-all' anti-fraud provisions serving a broad, remedial purpose, similar to the Securities and Exchange Act." *Fisher Cap. LLC*, 2024 WL 3771781, at *10 (citing *Gorman*, 2023 WL 2632111, at *14). To this end, courts have recognized the CFTC's power to prosecute fraud under these provisions in a variety of cases. *See, e.g.*, *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1319, 1334 (11th Cir. 2018) (affirming judgment for CFTC in "commodities-fraud case" alleging violations of Regulation 180.1 that "involve[d] no allegation . . . that the Defendants manipulated the price of a commodity"); *Fisher Cap. LLC*, 2024 WL 3771781, at *7–8 (denying motion to dismiss and rejecting the argument that "neither the statute nor the regulation grant the CFTC the authority to bring an enforcement claim alleging fraud in the spot commodity markets" under Section 6(c)(1) of the Act and Regulation 180.1); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 229 (E.D.N.Y. 2018) (rejecting motion to dismiss challenging the CFTC's jurisdiction and holding that the plain language of Section 6(c)(1) and Regulation 180.1 permit the CFTC to exercise jurisdiction over fraud in spot virtual currency transactions); *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 498–99 (D. Mass. 2018) (rejecting argument in defendant's motion to dismiss the CFTC's complaint that Section 6(c)(1) and Regulation 180.1 were only "meant to combat fraudulent market manipulation" and finding that

11

"Section 6(c)(1) and Regulation 180.1 explicitly prohibit fraud even in the absence of market manipulation").  Like courts held in *Southern Trust Metals*, *Fisher Capital*, *McDonnell*, and *My Big Coin Pay*, the CFTC's jurisdiction over fraud under Section 6(c)(1) and Regulation 180.1, including by mismarking, does not require allegations or evidence of price impact or a broader effect on commodities markets.

Indeed, the CFTC made clear in its rulemaking that "[a] market or price effect may well be indicia of the use or employment of a manipulative or deceptive device or contrivance; nonetheless, a violation of final Rule 180.1 may exist in the absence of any market or price effect."  *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41,398, 41,401 (July 14, 2011).

The CFTC has also brought enforcement actions under Section 6(c)(1) and Regulation 180.1 in a wide variety of mismarking cases.  *See In re Brochard*, CFTC No. 22-24, 2022 WL 4118640, at *5 (Sept. 6, 2022) (administrative order) (finding violations of Section 6(c)(1) and Regulation 180.1(a)(1)–(3) where respondent internally submitted false entries to inflate P&L of U.S. Dollar interest rate derivatives); *In re Rege*, CFTC No. 19-14, 2019 WL 4267850, at *5 (July 18, 2019) (administrative order) (finding violations of Section 6(c)(1) and Regulation 180.1(a) where respondent internally mismarked the valuation of interest rate swaps to inflate P&L); *In re Bourne*, CFTC No. 18-51, 2018 WL 4862368, at *2–3 (Sept. 28, 2018) (administrative order) (finding violations of Section 6(c)(1) and Regulation 180.1(a) where respondent internally mismarked the valuation of swap instruments to disguise significant trading losses).

Although Defendant cites to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024),

and argues that the Court is "required to exercise its independent judgment in deciding whether the [CFTC] has acted within its statutory authority" (Def. Mem. at 9), the Court can look to the CFTC's guidance and decisions in considering the breadth of Section 6(c)(1) and Regulation 180.1.  In *Loper Bright*, the Supreme Court overturned *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), which held that courts must defer to reasonable agency interpretations of ambiguous statutes.  Nonetheless, the Supreme Court in *Loper Bright* reaffirmed the vitality of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which stated "interpretations and opinions" of the relevant agency demonstrated "a body of experience and informed judgments to which courts and litigants [could] properly resort for guidance."  *Id.* at 140.  Thus, when a statutory question is within the realm of an agency's technical expertise, courts still can take guidance from an agency's body of experience and informed judgement. *Loper Bright*, 603 U.S. at 402 (citing *Skidmore*, 323 U.S. at 140).

In sum, Defendant's argument that the plain text of these anti-fraud provisions should be given a narrower meaning by citing to cherry-picked passages of the legislative history is an interpretation that is at odds with the plain language of the statute and regulation, case law, CFTC decisions, and rulemaking finding that Section 6(c)(1) of the Act and Regulation 180.1(a)(1)–(3) prohibit fraud even absent market manipulation.

### 2. The CFTC's Authority to Prosecute Fraud Under Section 4b(a)(1)(A)–(C) of the Act Is Broad and Extends Beyond Cases Involving Victim Losses Caused Solely from Trading.

Contrary to Defendant's arguments, the scope of Section 4b is not restricted solely to "losses resulting from a commodities order or transaction."  *See* Def. Mem. at 6 (ECF No. 46). The CFTC has prosecuted a variety of fraud actions under Section 4b where customer losses from the fraud are not directly tied to trading.  And courts have found Section 4b liability for

13

fraud in numerous cases where the fraudulent acts did not "induce a single trade or influence any external market participant"—contrary to Defendant's erroneous claims that this is required to satisfy the "in connection with" prong.  *See* Def. Mem. at 10 (ECF No. 46).  For example, in *CFTC v. Zhu*, No. 2:23-cv-4937, 2023 WL 12144272, at *1 (C.D. Cal. Dec. 7, 2023), the court found defendants liable for fraud in connection with trading forex and/or digital asset commodities under Sections 4b and 6(c)(1) of the Act and Regulation 180.1.  In that case, the court found the "in connection with" element was satisfied even though the "trading accounts were a complete ruse, and no actual trading took place" on behalf of customers.  *Id*. at *1, *7 (holding the "in connection with" requirement "is satisfied where the contract of a sale of a commodity in interstate commerce and the fraud are not independent events") (citing cases). Similarly, in *CFTC v. Fin. Tree*, No. 2:20-cv-1187, 2022 WL 36416, at *5 (E.D. Cal. Jan. 4, 2022), *report and recommendation adopted*, 2022 WL 718391 (E.D. Cal. Mar. 9, 2022), the court found defendants liable for commodity pool operator fraud in connection with forex transactions under Section 4b of the Act even though "no trading" occurred in one of defendants' trading accounts and only "limited forex trading" occurred in another account.  In both *Zhu* and *Fin. Tree*, the fraudulent acts affected the defrauded customers or pool participants but did not "induce" trades or "influence any external market participant."  Nevertheless, the courts found defendants in both cases were liable for fraud under Section 4b of the Act.

Courts have also found violations of Section 4b based upon the issuance of false statements to customers or pool participants purporting to show profitable trading even though such statements did not "induce" trades or "influence any external market participant."  *See, e.g.*, *CFTC v. LaMarco*, No. 2:17-cv-4087, 2019 WL 4247632, at *4 (E.D.N.Y. Sept. 5, 2019) (denying motion to dismiss and noting the Complaint alleges violations of Section 4b and

14

"further explains that the fabricated statements depicted fictitious returns showing the value of the commodity pool increase, notwithstanding the fact that [defendant] had lost nearly all of the participants' funds through unsuccessful trading and diversion of funds"); *CFTC v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 377–78 (W.D.N.C. 2012) (finding defendants liable under Section 4b for "written statements purporting to show profitable forex trading when, in fact, their forex trading resulted in losses") (citing cases).

Consistent with court findings, the CFTC has prosecuted mismarking cases under Section 4b before. *See CFTC v. Wang*, No. 1:16-cv-6961 (S.D.N.Y. Apr. 17, 2017), ECF No. 18 (consent order) (finding trader violated Section 4b(a)(1)(B) of the Act by making false entries in company's internal trading records to conceal losses in crude oil futures); *CFTC v. Brooks*, No. 1:13-cv-6879, 2014 WL 4443446, at *4–5 (S.D.N.Y. Aug. 1, 2014) (consent order) (finding violations of Sections 4b and 6(c)(1) of the Act and Regulation 180.1(a) where defendant mismarked internal books and records to inflate the profitability of futures positions); *CFTC v. Taylor*, No. 1:12-cv-8170, 2013 WL 5437362, at *4-5 (S.D.N.Y. Aug. 29, 2013) (consent order) (finding trader violated Section 4b of the Act by preparing false profit and loss statements to conceal losses); *In re Moster*, CFTC No. 09-08, 2009 WL 10460307 (Feb. 11, 2009) (administrative order) (finding trader violated Section 4b of the Act by providing employer with false information to conceal losses); *In re Hartog*, CFTC No. 00-07, 2000 WL 256123 (Mar. 7, 2000) (administrative order) (finding trader violated Sections 4b and 4c(b) of the Act and Regulation 33.10 by making false statements to the company's board of directors to conceal negative open trade equity and trading losses); *cf. CFTC v. Cassidy*,[4] No. 1:08-cv-9962 (GBD), 2009 WL 5454918, at *5 (S.D.N.Y. Nov. 5, 2009) (consent order) (finding trader violated of

---

[4] In *SEC v. Lee*, 720 F. Supp. 2d 305, 336 (S.D.N.Y. 2010), this Court denied a motion to dismiss the CFTC's complaint, finding that the alleged fraud scheme was sufficiently pleaded under the Act.

Section 4c(b) of the Act and Regulation 33.10 by mismarking options to inflate the value of trading book).

The cases cited by Defendant in an attempt to limit this statutory provision are inapposite: *Tatum v. Legg Mason Wood Walker, Inc.*, 83 F.3d 121, 122–23 (5th Cir. 1996) (finding no 7 U.S.C. § 6b liability because "Plaintiffs in this case never intended to purchase commodities") and *Kearney v. Prudential-Bache Secs., Inc.*, 701 F. Supp. 416, 419 (S.D.N.Y. 1988) (finding "in connection with" was not met where defendants allegedly gave plaintiff incorrect tax advice, failed to properly supervise plaintiffs trading account, improperly withdrew funds from a separate account due to a clerical error, and recommended "unsuitable investments and trading"). Unlike in those cases, here, the Defendant directly misled his employer *about* trades he entered on their behalf with fraudulent intent.

> **3.    Defendant Attempts to Impose a Sequencing Requirement for the "In Connection With" Element That Does Not Exist and Is Unsupported by the Law.**

Defendant is attempting to graft a sequencing requirement that does not exist in the text of the charged statutes or regulation by referencing one fact pattern—one that involves fraudulent solicitations that by its nature must precede trading—and concluding that the sequence found in that fact pattern is therefore the only way a person can violate the charged anti-fraud provisions. Def. Mem. at 10 (discussing *R&W Tech. Servs. Ltd. v. CFTC*, 205 F.3d 165 (5th Cir. 2000)). There is no such sequencing requirement in the charged anti-fraud statutes and regulation, and the Court should reject Defendant's attempt to graft such a requirement onto the Act. That Defendant's fraudulent mismarking took place after his trades does not change that his fraudulent mismarking is "in connection with" his trades, rather it is simply the nature of a

16

mismarking fraud that the fraudster will communicate falsely about his trades after entering into them.

There are a variety of cases, for example, in which courts have found liability for false statements issued by a defendant *after* the trading and losses occurred. *See, e.g.*, *CFTC v. LaMarco*, 2019 WL 4247632, at *4 (denying motion to dismiss where complaint sufficiently alleged fraud under Section 4b of the Act where defendant issued fabricated statements throughout the course of the fraud including *after* defendant "had lost nearly all of the participants' funds"); *CFTC v. Rolando*, 589 F. Supp. 2d 159, 165, 169 (D. Conn. 2008) (finding trader violated Section 4b(a)(2) of the Act "by providing false account statements to customers that misstated the value of and trading activity in their accounts" where trader "used these false account statements to hide from customers the substantial losses the customers were incurring"); *CFTC v. Machado*, No. 1:11-cv-22275, 2012 WL 2994396, at *6 (S.D. Fla. Apr. 20, 2012) (finding "Defendants violated Section 4b(a)(2)(B) of the Act . . . by willfully issuing checks to customers that falsely represented trading profits and sending customers IRS forms 1099-INT falsely representing interest paid on supposedly profitable forex trading, when, in fact, the limited amount of forex trading actually conducted by Defendants resulted in net losses.").

Defendant cites to *R&W Tech. Servs. Ltd.* in an attempt to narrow the application of "in connection with" under Section 4b and incorrectly interprets this case to mean that fraudulent conduct must induce trading to be "in connection with" it. But the fraudulent conduct at issue in that case—where the fraud later led to trading—is only one factual scenario that falls within the "in connection with" spectrum. The *R&W Tech. Servs. Ltd.* defendants misrepresented the expected profitability and risks associated with using their trading software when advertising it. *Id.* at 172. The defendants made money off the sale of the software, not from their customers'

17

trading. *Id.* In discussing whether the defendant's misrepresentations were sufficiently "in connection with" trading, the court noted that "the unusual aspect of this case is that the petitioners executed no trades for customers. They only sold software." *Id.* Accordingly, the only trades that would be "in connection with" the defendants' fraudulent solicitation would occur later and only by the customers. This trading, the court found, was sufficiently "in connection with" defendants' misrepresentations in selling their software. *Id.* at 173. When making that finding the court recognized that the purpose of this software and the customers' expectation in purchasing it was to later trade. *Id.* In other words, the likelihood—but not certainty—that customers would later trade was sufficiently in connection with the defendants' fraudulent advertising of their trading software.

*R&W Tech. Servs. Ltd.* thus supports the CFTC's position. The court could have drawn the line restrictively and found that the trades were not "in connection with" the fraud because the fraud only resulted in the sale of software to customers—no trading took place at the time of the fraudulent acts. It did not and, in fact, recognized the importance of construing Section 4b broadly:

> There are additional reasons to construe § 4b(a) broadly rather than narrowly. Originally, § 4b(a) only applied to members of a contract market. In 1968 it was extended to reach "any person." In fact, "[t]he legislative history [of § 4b(a)] indicates a progressive trend toward broader application of the CEA." In 1974, Congress gave the Commission even greater enforcement powers, in part because of the fear that unscrupulous individuals were encouraging amateurs to trade in the commodities markets through fraudulent advertising. Remedial statutes are to be construed liberally, and in an era of increasing individual participation in commodities markets, the need for such protection has not lessened.

*R&W Tech. Servs. Ltd.*, 205 F.3d at 173 (internal quotations omitted).

Defendant also relies on *CFTC v. Vartuli*, 228 F.3d 94, 101–02 (2d Cir. 2000), to narrow the "in connection with" element. In this case, too, the court found that the element was met

18

where false statements were made about a computer software that advises traders.  The court

firmly rejected defendants' argument that their misrepresentations were made in connection with

the sale of software, not in connection with commodity futures transactions:  "***By its terms,***

***Section [6]b is not restricted . . . to instances of fraud or deceit 'in' orders to make or the***

***making of contracts.  Rather, Section [6]b encompasses conduct 'in or in connection with'***

***futures transactions.  The plain meaning of such broad language cannot be ignored***."  *Id*. at

101 (citing *Saxe v. E.F. Hutton & Co*., 789 F.2d 105, 110–11 (2d Cir. 1986)) (emphasis added).

As noted above, Defendant's conduct here was even more directly related to futures trades than

the conduct in *Vartuli* because his mismarking was directly related to the trades he entered.

### 4.    Section 4b(a)(1)(A)–(C) Applies to Employees Trading on Behalf of Their Employers.

Defendant argues Section 4b is historically rooted in the protection of the principal-agent

relationship, specifically brokers on behalf of their customers, and seems to suggest that 4b is

limited to that context.  However, "it is the plain language of the statute which governs its

application."  *Merrill Lynch Futures Inc. v. Kelly*, 585 F. Supp. 1245, 1251 (S.D.N.Y. 1984).

The plain language of Section 4b(a) requires that the futures contract was made "for or on behalf

of any other person."

Both courts and the CFTC have recognized that this requirement is satisfied by

employees trading for their employers' accounts.  *See, e.g.*, *Brooks*, 2014 WL 4443446, at *4–5

(trader who fraudulently mismarked trades executed for or on behalf of his employer violated

Section 4b of the Act); *Taylor*, 2013 WL 5437362, at *4–5 (trader who concealed losses arising

from trades on employer's behalf through false profit and loss statements violated Section 4b of

the Act); *see also Merrill Lynch Futures, Inc. v. Kelly*, 585 F. Supp. at 1251–53 (holding clerk at

Merrill Lynch Futures, who participated in a scheme to defraud the company relating to

19

improper trading of futures contracts in the company's accounts, was properly alleged to have violated Section 4b of the Act); *In re Hartog*, 2000 WL 256123, at *4 (finding a general manager of a grain operator to have violated Regulations 33.10(a), (b) and (c) by defrauding his employer after engaging in unauthorized trading, deceiving his employer, and making false written statements that concealed the nature of the scheme and his trading losses).  Here, Defendant traded futures and commodities in interstate commerce on behalf of his employer, the Company, and defrauded the Company by mispresenting the terms of those trades.

5.    **In Civil Enforcement Actions Under Section 6(c)(1) and Regulation 180.1(a), the CFTC Is Not Required to Prove Transaction or Loss Causation.**

Defendant applies the wrong legal standard for Section 6(c)(1) of the Act and Regulation 180.1(a), arguing that the CFTC must plead "transaction causation and loss causation."  Def. Mem. at 14 (ECF No. 46).  Similar to the SEC under a Section 10(b) claim,[5] the CFTC—unlike a private litigant—is not required to prove reliance, damages, or loss causation as elements of a violation under these provisions.  *See LaMarco*, 2019 WL 4247632, at *4 (denying motion to dismiss and finding "[t]here is no bright line rule requiring plaintiffs to plead loss causation under the CEA. . . . To the extent such a requirement existed, it appears to apply only to private litigants, not CFTC-brought enforcement actions.") (citing cases); *McDonnell*, 332 F. Supp. 3d at 717 ("To prove a violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) . . . the Commission must show that Defendants engaged in prohibited conduct (*i.e.*, employed a fraudulent scheme; made a material misrepresentation, misleading statement or deceptive omission; or engaged in a business practice that operated as a

---

[5] *See, e.g.*, *SEC v. Goble*, 682 F.3d 934, 942–43 (11th Cir. 2012) ("Because this is a civil enforcement action brought by the SEC, reliance, damages, and loss causation are not required elements" for a §10(b) claim).

fraud); with scienter; and in connection with a contract of sale of a commodity in interstate commerce.")); *see also CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d at 502 ("[W]here, as here, the CFTC, an administrative agency, brings an enforcement action, reliance is not a necessary element of a violation under the CEA"); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 446–47 (D.N.J. 2000) ("[C]ustomer reliance . . . need not be proven in an enforcement action alleging fraud.").

Defendant cites to inapposite case law for his erroneous interpretation of the Act. *See* Def. Mem. at 14–15. For example, *Krukever v. TD Ameritrade, Inc.*, 337 F. Supp. 3d 1227 (S.D. Fla. 2018), involved a class-action complaint brought by a group of investors who sued a TD Ameritrade subsidiary for prematurely liquidating customers' futures options contracts. The court in *Krukever* found, among other things, that the plaintiff investors failed to plead their fraud claims under the Act with sufficient particularity and failed to satisfy the scienter requirement—issues that are not present here.[6] *See id.* at 1238, 1241. Defendant also cites to *SEC v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010), as evidence that the CFTC must prove transaction causation and loss causation. *See* Def. Mem. at 15. However, this Court in *SEC v. Lee*—a case in which both the CFTC and SEC charged a former energy trader for the Bank of Montreal with fraud for mismarking and misvaluing the bank's natural gas options book—denied "each of the motions to dismiss," rejecting similar arguments made by Defendant here. *Id.* at 338. Notably, the Court explicitly stated in its opinion that "[u]nlike private litigants, who must comply with the PSLRA [Private Securities Litigation Reform Act], the SEC is not required to prove investor reliance, loss causation, or damages in an action for securities fraud." *Id.* at 325.

---

[6] *See supra* Section III.A.4.

21

### 6.    Defendant's Remaining Arguments Are Irrelevant and Meritless.

Despite pleading guilty to the conduct at issue, Defendant argues that his fraudulent conduct "would not have impacted public investors" and that the CFTC needed to allege that he "injected false information into the broader marketplace to affect price discovery" and is therefore not "in connection" with the commodity markets.[7]  *See* Def. Mem. at 11–14.  These arguments are repetitive of Defendant's arguments that Section 6(c)(1) and Regulation 180.1 are intended to "protect the public price discovery process."  Def. Mem. at 7–8.  As discussed in Section III.B.1. above, a claim for fraud under Section 6(c)(1) and Regulation 180.1(a) does not require proof of market or price impact.  *See Gorman*, 2023 WL 2632111, at *5 ("[I]t is foreseeable, and in fact was foreseen by the Commission, that ***a person could employ a manipulative device or contrivance in connection with a swap or commodity that has no effect on the price of the commodity itself***, that the alleged fraudulent scheme was not carried out to manipulate a price, or, as here, that the manipulation of the price of a commodity was used to defraud an investor.") (emphasis added) (citing 76 Fed. Reg. at 41401).  Unsurprisingly, Defendant fails to cite a single CFTC case holding that Section 6(c)(1) and Regulation 180.1 require proof of market or price impact in a fraud action.

Second, Defendant argues that the Act's anti-fraud provisions do not apply to him because neither he nor the Company were registrants and "owed no reporting or disclosure

---

[7] Defendant also argues that the rule of lenity requires that "any ambiguities" regarding the "in connection with" requirement for the relevant provisions be resolved in his favor.  Def. Mem. at 8 n.5.  The rule of lenity "applies primarily to the interpretation of criminal statutes . . . [but] can apply when a statute with criminal sanctions is applied in a noncriminal context."  *Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1, 15 (2011) (finding rule of lenity does not apply to antiretaliation provision of Fair Labor Standards Act where statute is not ambiguous).  Here, as in *Kasten*, there is no ambiguity in the language of the Act's provisions at issue and, as such, the rule of lenity does not apply.  *See United States v. Phillips*, No. 1:22-cr-138, 2024 WL 1300269, at *32 (S.D.N.Y. Mar. 27, 2024) (holding rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute") (quoting *United States v. DiCristina*, 726 F.3d 92, 97 (2d Cir. 2013)).

22

obligations." *See* Def. Mem. at 17–19.  This argument is deeply flawed.  The Act's antifraud provisions apply broadly to "***any person***" engaging in prohibited conduct, regardless of registration status, while registration violations themselves constitute separate offenses under the Act.  *See, e.g.*, *CFTC v. Alexandre*, 801 F. Supp. 3d 185 (S.D.N.Y. 2025) (holding that an unregistered company and its founder committed commodity pool operator fraud in violation of 7 U.S.C. §§ 6b, 6*o* while also failing to properly register in violation of 7 U.S.C. §§ 6m(1) and 6k(2)); *CFTC v. Montano*, No. 6:18-cv-1607, 2020 WL 5534521, at *9 (M.D. Fla. July 14, 2020) (denying defendant's motion for summary judgment and finding his argument "simply ignores that even CTAs [commodity trading advisors] exempt from registration may be held liable for fraud").  The Court should therefore reject Defendant's meritless market impact and registration arguments.

Finally, Defendant claims (without support) that there must be public reporting of misinformation that influenced the broader commodities market for conduct to violate the charged anti-fraud provisions.  This is simply repackaging the same arguments, that to be actionable, a fraud must cause a price impact or broadly affect market integrity and that the "other person" cannot be an employer.  As discussed above in Sections III.B.1 and III.B.4, these are not requirements of the anti-fraud provisions charged.  Almost no fraud involving retail customers—who often put their retirement funds, kids' college funds, and life savings into a commodity pool operated by a member of their local community—involves, for example, public reporting of the life-altering misappropriation of their funds.  *See, e.g.*, *Fisher Cap. LLC*, 2024 WL 3771781, at *1 ("a fraud action brought by the [CFTC] alleging that Defendants . . . engaged in a systematic, $30 million scheme targeting vulnerable people and defrauding them into converting their hard-earned retirement savings into overpriced, unreliable investments

in gold and silver coins"); *CFTC v. Alexandre*, 801 F. Supp. 3d at 191 (scheme in which tens of thousands of investors poured in contributions of over $262 million into a Ponzi scheme); *CFTC v. Mirror Trading Int'l Prop. Ltd.*, No. 1:22-cv-635, 2023 WL 3190336, at *9–14 (W.D. Tex. Apr. 24, 2023) (finding defendant committed forex and commodity pool operator fraud by fraudulently soliciting at least $1.7 billion in Bitcoin from at least 23,000 U.S. participants for forex trading without being registered as required). Those fraudulent acts have an enormous impact on the people involved; but rarely, if ever, cause a price impact or otherwise influence activity in the broader commodities market.[8] Limiting the CFTC's anti-fraud authority as requested by Defendant would create a gaping hole in the CFTC's ability to protect the public and punish wrongdoers. This Court should reject Defendant's arguments to do so—arguments that are in contravention of decades of established precedent.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety or, in the alternative, grant the CFTC leave to file an Amended Complaint addressing any deficiencies.

Dated:  April 28, 2026

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF COMMODITY FUTURES TRADING COMMISSION

*/s/ Jonathan G. Coppola*
Jonathan G. Coppola
Trial Attorney
Commodity Futures Trading Commission
Division of Enforcement
290 Broadway, 6th Floor
New York, N.Y.  10007

---

[8] Such cases fulfill the CFTC's statutory mission, which includes preventing "fraudulent or other abusive sales practices," "misuses of customer assets," "price manipulation," and "systemic risk."  7 U.S.C. § 5(b).

24

Phone: (646) 746-9700
jcoppola@cftc.gov

Danielle E. Karst
Associate Director, *Pro Hac Vice*
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
Phone: (202) 418-6158
dkarst@cftc.gov

**CERTIFICATE OF COMPLIANCE**

This memorandum of law complies with the word-count limitations of Local Civil Rule 7.1(c) and the Individual Rules and Practices of Judge George B. Daniels.  According to the word-processing system used to prepare this document, this memorandum contains 8,394 words and has 24 pages.  This word and page count exclude the caption, table of contents, table of authorities, signature blocks, and this certificate of compliance.

/s/ Jonathan G. Coppola
Jonathan G. Coppola

**CERTIFICATE OF SERVICE**

On April 28, 2026, the undersigned, an attorney with Plaintiff CFTC, hereby certifies that a true and accurate copy of the CFTC's Opposition to Defendant's Motion to Dismiss was filed via the CM/ECF system.  I am relying upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties in this litigation.

Dated:  April 28, 2026                            /s/ Jonathan G. Coppola
Jonathan G. Coppola